**BOYD BROTHERS TRANSPORTATION COMPANY, INC., a corporation, Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES et al. (fictitious defendants), Defendants.**

Civ. A. No. 81–642–N.

United States District Court, M. D. Alabama, N. D.

June 3, 1982.

found to constitute complete defenses.

Boyd Whigham, Whigham & Pelfrey, and Smith, Bowman, Thagard, Crook & Culpepper, William P. Cobb, II, Montgomery, Ala., for plaintiff.

Hill, Hill, Carter, Franco, Cole & Black, H. E. Nix, Jr., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

This cause is now before the Court on defendant's motion for summary judgment, filed March 24, 1982; defendant's motion for reconsideration of this Court's order allowing the second amendment to the complaint, filed March 26, 1982; and motion in limine, filed March 24, 1982. A hearing was held on the above motions on May 7, 1982. At the hearing the defendant Fireman's Fund Insurance Companies conceded that North Carolina law applies to the breach of contract claim contained in the second amendment to the complaint; therefore, defendant's motion for reconsideration based on the argument that Alabama law does not recognize a breach of contract claim for negligent defense of an insured by an insurer is due to be denied. In addition, the Court determined that the issue of whether to admit all or portions of the trial transcript from the hearing in New York on the issue of damages will be determined at trial and not by a motion in limine. Since the other motions were disposed of at the hearing, this opinion will address only the issues raised by the motion for summary judgment.

The complaint, as amended, sets out claims against Fireman's Fund for bad

faith, negligence, wantonness, and breach of contract in defending and untimely withdrawing from the defense of the plaintiff Boyd Brothers in the underlying action of *Berlin Steel Co., Inc. v. Boyd Brothers Transportation Co., Inc.,* File No. 03893B (App.Div. June 18, 1981). Berlin Steel filed suit against Boyd Brothers sometime in 1974 to recover for damages to a steel shipment allegedly caused by Boyd Brothers in transporting the steel. Fireman's Fund, as an insurer of Boyd Brothers, undertook to defend the action pursuant to a non-waiver agreement. On September 27, 1977, the New York Supreme Court, County of New York, entered summary judgment in favor of Berlin Steel on the issue of Boyd Brothers' liability. Nine months later, on June 30, 1978, Fireman's Fund wrote a letter to Boyd Brothers confirming that summary judgment had been entered and refusing to defend further on behalf of Boyd Brothers. On July 5, 1978, the attorneys, who had been employed by Fireman's Fund for the case, notified Boyd Brothers that they had filed a notice of appeal but that the decision to proceed and the cost of the appeal were the responsibility of Boyd Brothers.

Boyd Brothers decided to proceed with the appeal and on approximately January 5, 1979, it paid out $265.35 as costs of that appeal. The appeal ended with an affirmance of the summary judgment on October 9, 1979. The case was returned to the trial level for a hearing on the issue of damages. Fireman's Fund paid for the attorney fees and costs of the damages hearing. Damages in the amount of $13,900.00, together with interest and costs, were awarded on May 29, 1980. A notice of appeal was filed but Boyd Brothers determined not to pursue the appeal. The appeal was dismissed on June 18, 1981. Four months later, on October 1, 1981, the instant case was filed.

■ Defendant moves for partial summary judgment on the grounds that the tort claims for bad faith, negligence, and wantonness are barred by the Alabama one year statute of limitations. Ala.Code § 6–2–39(a) (1975). At the outset the Court is faced with the question of which state's statute of limitations is applicable to a tort which occurred in New York and is being tried in a federal court in Alabama. The parties have agreed that Alabama's conflicts of law rules apply [1] and that Alabama would apply its own statute of limitations to a tort cause of action arising in another state. *Fricks v. Carroll,* 368 F.2d 329 (5th Cir. 1966). In Alabama a tort action for bad faith or negligent failure to settle a claim is governed by the one year statute of limitations. *Dumas v. Southern Guaranty Ins. Co.,* 408 So.2d 86 (Ala.1981). Clearly this statute would also apply to bad faith or negligence on the part of the insurer in defending a claim.

Since there is no question of the applicable time limitations, the issue is when did the cause of action accrue and the time begin to run. Defendant argues that the injury was complete and the cause of action accrued no later than October 9, 1979 when the appellate court affirmed the granting of summary judgment on the issue of liability. The argument of defendant is based on the Alabama Supreme Court decision in *Garrett v. Raytheon Co., Inc.,* 368 So.2d 516, 519 (Ala.1979), which interpreted the general tort rule that an action accrues with the occurrence of the initial injury and damage, however slight, not when the full extent of the damage becomes known. Plaintiff argues that the cause of action did not accrue until the entire litigation became final on June 18, 1981. Plaintiff's argument is based in part on the decision in *Hartford Accident and Indemnity Company v. Cosby,* 173 So.2d 585 (1965), and similar cases in other jurisdictions, holding that an action against an insurer for negligent or bad faith refusal to settle within the policy limits does not accrue until the underlying litigation becomes final.

Neither the parties nor the Court have been able to find a case in this or any other jurisdiction which is exactly on point. The Court is therefore faced with choosing the

---

1. *Wells v. Simonds Abrasive Co.,* 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1952); *Klaxon Co.* v. *Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940).

time of accrual which reason and policy considerations indicate should be applicable to this claim against the insurer. Since insurance is a highly regulated area which has developed its own body of law, policy considerations dictate against mechanically applying rules from other areas of substantive law, such as the law of torts, to cases involving the relationship between insurer and insured. This is particularly true in trying to fashion a rule in the context of the unique factual situation involved here: An insurer, denying coverage, who undertakes to defend pursuant to a non-waiver agreement, then refuses to appeal a grant of partial summary judgment while remaining in the case through a trial determination on the other issues. The Court is of the opinion that when faced with such a difficult and unique situation the better procedure is to look to the rules applicable to similar causes of action in the area of insurance litigation rather than to the general tort theories set out in *Raytheon*.[2]

There are two primary causes of action which arise out of the relationship between insurer and insured in regard to the conducting of a third party suit against the insured. First, is the claim arising out of the insurer's wrongful failure to defend. Second, is the cause of action arising out of the insurer's negligent or bad faith failure to settle.

In cases involving a wrongful failure to defend the general rule appears to be that the cause of action does not accrue until the underlying litigation is final. *Continental Casualty Co. v. Florida Power and Light Co.*, 222 So.2d 58 (1969); *Moffat v. Metropolitan Casualty Insurance Co.*, 238 F.Supp. 165 (M.D.Pa.1964); *Colpan Realty Corp. v. Great American Ins. Co.*, 83 Misc.2d 730, 373

N.Y.S.2d 802 (1975). *See also Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co.*, 484 F.Supp. 1375 (D.Del.1980). Wrongful failure to defend is a contract not a tort action. The rule, however, recognizes that the breach does not occur and the cause of action does not accrue when the insurer refuses to defend and the insured pays his first litigation expenses. Most of the courts reason that as long as the underlying action is not final, there is a continuing duty on the part of the insurer to defend and a continuing breach of that duty. The breach is not complete until the litigation is over. *Moffat*, 238 F.Supp. at 175. Moreover, the cause of action for indemnity does not arise until there is a final judgment against the insured. To have a different date of accrual for the failure to defend would lead to a multiplicity of law suits, a result "long in disfavor in law." *Id.*

Second, in cases alleging negligence or bad faith on the part of the insurer in the conducting or settling of litigation, the rule again is that the cause of action does not accrue until the underlying litigation has ended. *Hartford Accident & Indemnity Co. v. Cosby*, 173 So.2d 585 (1965); *American Mutual Liability Ins. Co. v. Cooper*, 61 F.2d 446 (CA 5) *cert. den.* 289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1483 (1932). In this type of tort claim the insured is already obligated to pay the judgment up to the policy limits and the insured is attempting to hold the insurer liable for any excess over the policy limits. Clearly the cause of action does not accrue until the litigation is over because the insured has not been injured until there is a final judgment for damages in excess of the policy limits. 173 So.2d at 590.

■ In the underlying action in the instant cause the insurer refused to admit

---

**2.** One of defendant's arguments, based on *Raytheon*, is that damages were incurred the minute plaintiff paid the first legal fees on appeal. These "damages" made certain an injury due to the denial of summary judgment; therefore, the cause of action accrued as of the date of this damage. It is appropriate to note that an action between attorney and client for attorney's fees or an action by one claiming the right to be indemnified for attorney's fees by a third party generally does not accrue until the

final work by the attorney is complete. *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co.*, 484 F.Supp. 1375 (D.Del.1980); *Succession of Buvens*, 373 So.2d 750 (La.Ct.App.1979); *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 425 F.Supp. 1373 (W.D.La.) *rev'd on other grounds*, 568 F.2d 472 (1977). The attorney in this case did not complete his final work for Boyd Brothers until the appeal of the damages hearing was dismissed.

coverage and proceeded under a non-waiver agreement. A non-waiver agreement allows an insurer to defend its insured without losing the right to raise any defenses to indemnity that it might have under the policy. Appleman, *Insurance Law and Practice* Vol. 7C, § 4694, p. 336 (Berdal ed. 1979). It appears that one purpose of such an agreement is to avoid the possibility of being sued for a wrongful failure to defend in the situation where coverage is contested. Appleman, § 4954, p. 348–49, and § 4689, p. 216–217. If plaintiff were contesting the insurer's denial of coverage, this case would come squarely within the holding of *Hartford Accident & Indemnity Co. v. Cosby*, 173 So.2d 585 (1965). There would be a claim for indemnity under the policy and a claim for liability for the excess due to the insurer's negligence or bad faith. Neither of these causes of action would accrue until the underlying litigation was concluded.

The *Cosby* and *Cooper* cases differ from the instant case in that the insurer's denial of coverage in those cases was disputed by the insured. Here, lack of coverage is not disputed. There are other applicable policy considerations; however, indicating that the lack of coverage should not be a determinative fact in formulating a rule on accrual of plaintiff's cause of action. The Court notes that one of the major concerns in cases such as *Hartford* is that until the litigation is final the ultimate outcome and its impact on the litigants might change. 173 So.2d at 590. This is especially true in the majority of cases where the issues of liability and damages are not separated as they were in the litigation at issue here. Moreover, summary judgments are often not dispositive of all of the issues in a case. A rule requiring the insured to sue for negligence in regard to one part of a case while the rest of the litigation is ongoing would mire the courts in a multiplicity of lawsuits and lead to speculative and possibly conflicting results.[3]

Another important consideration is that while plaintiff Boyd Brothers was appealing the denial of summary judgment there was still a relationship between plaintiff and defendant-insurer in regard to the litigation on the damages issue. Courts should not impose on the insured the Hobson's choice of (1) instituting legal actions against the insurer for the negligence of counsel while the insured is still depending on that counsel for the conduct of all or part of the remaining third-party litigation, or (2) relinquishing his claim by allowing it to become time barred.[4] "A statute of limitations must be read in the light of reason and common sense." *Moffat v. Metropolitan Casualty Insurance Co. of New York*, 238 F.Supp. 165, 175 (M.D.Pa.1964).

Finally, adopting the rule that this claim did not accrue until the underlying litigation in New York was final has the virtue of clarity and certainty. In arguing that the tort rule should apply, the insurer pointed out several points in the underlying litigation which might be construed as being when the injury and initial damage occurred. Although accrual is not always a clear question, the courts should avoid, if possible, formulating rules which turn the issue into a guessing game. For all of the

---

**3.** First, as long as the insurer remained involved in any part of the underlying action, there remained the possibility of further negligent or bad faith acts, each constituting a separate injury and possibly giving rise to a separate suit. Second, the final award might have been so minimal that this subsequent litigation would have been uneconomical for plaintiff to pursue. Judges need not ignore the realities of life and court calendars are not so bare that judges need to force the filing of suits which may ultimately prove a waste of time and money to all concerned. Finally, a decision on the issue of damages in this litigation would have to await a determination of damages and the final assessment of court costs and attorney fees in the underlying litigation.

**4.** Defendant's attorney might argue that there is not a Hobson's choice as plaintiff was free to employ other counsel. Clearly this was not true as regards the trial of damages. The attorney was paid by Fireman's Fund and could not be dismissed by Boyd Brothers. Moreover, if Boyd Brothers had refused to use the insurer's attorney on appeal it might reasonably face a claim of breach of contract or contributory negligence for firing the one attorney who was familiar with the case.

above reasons, the Court has determined that the cause of action for negligence, wantonness, and bad faith did not accrue until the litigation between Berlin Steel and plaintiff Boyd Brothers became final on June 18, 1981. This case having been filed within one year from that date, defendant's motion for partial summary judgment is due to be denied. Thus, defendant will need to defend against plaintiff's tort theories as well as plaintiff's contract theory, although the Court is not clear that the burden on defendant as a practical matter is any different. An order will be entered this date in accordance with this opinion.