Medora CUNNIFF, Plaintiff,

v.

WESTFIELD, INC., Loews Theater Management Corp., and Loews South Shore Mall, L.P., Defendants.

WESTFIELD, INC., and Westland South Shore Mall, L.P., Third–Party Plaintiffs,

v.

BRIGHTSHORE SEALER CORPORATION, Third–Party Defendant.

WESTFIELD, INC. and Westland South Shore Mall, L.P., Second Third–Party Plaintiffs,

v.

MARYLAND CASUALTY COMPANY, Second Third–Party Defendants.

No. 89–CV–0291 (DRH).

United States District Court, E.D. New York.

Aug. 26, 1993.

Kaplan, Oshman, Helfenstein & Matza by Theodore Oshman, New York City, for plaintiff.

Jeffrey S. Richman, New York City, for defendants.

MacCartney, MacCartney, Kerrigan & MacCartney by William Kerrigan, Nyack, NY, for second third-party defendant.

Diamond, Rutman & Costello, New York City, for second third-party defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

In the above-referenced action, plaintiff Medora Cunniff sues for damages arising out of injuries allegedly caused when she slipped in the parking lot of the South Shore Mall in Bay Shore, Long Island. Subsequent to the filing of that action, defendants Westfield, Inc. and Westland South Shore Mall, L.P., a California limited partnership, (collectively, "Westfield"), commenced a second third-party action against Maryland Casualty Company, ("Maryland"), which seeks a declaratory judgment regarding various insurance coverage disputes between Westfield and Maryland. Currently before the Court is Westfield's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on its claims against Maryland. For the reasons stated below, Westfield's motion is granted in part and denied in part.

### Background

On May 13, 1988, Brightshore Sealer Corporation, ("Brightshore"), amended the provisions of its insurance policy with Maryland in order to cover certain work being performed on the South Shore Mall parking lot by Brightshore for defendant Westfield. Although the amended policy named Westfield as an additional insured, it also contained a provision which excluded from coverage "damage arising out of any act or omission of the additional insured or any of his employees, other than general supervision of work performed for the additional insured by the name insured."

On December 18, 1988, plaintiff Medora Cunniff allegedly slipped on some ice near the entrance of Loews South Shore Cinema, Inc., (which is located at the South Shore Mall), and sustained personal injuries. Shortly thereafter, she filed a complaint against Westfield. Subsequently, Westfield brought an impleader action against Brightshore, Maryland's insured, alleging negligence in the performance of its services and claiming indemnification pursuant to a service agreement and the policy. Westfield also demanded that Maryland assume the defense of the matter on its behalf, although Maryland refused. By reason of that denial, Westfield was forced to defend the action itself, and consequently incurred costs, expenses and attorneys fees.

Thereafter, Westfield brought a declaratory judgment action requesting: (1) that the Court declare that Maryland is obligated under the policy to defend the pending action on behalf of Westfield, and to indemnify it for any judgment awarded; (2) that Maryland is required to pay any and all attorneys' fees, costs and other expenses incurred thus far by Westfield in the defense of the pending action; and (3) that Maryland is required to pay all attorneys' fees, costs and other expenses incurred by Westfield in bringing the declaratory judgment. Since the filing of Westfield's current motion, Maryland agreed to fully defend and indemnify Westfield up to the limits of the insurance policy issued to the primary insured, Brightshore. However, Maryland nevertheless "reserves the right to any policy defenses *not heretofore* raised."

By its summary judgment motion, Westfield moves the Court to make the following findings: (1) that, having admitted that it is obligated to defend and indemnify Westfield, Maryland is estopped from denying that obligation; (2) that because a conflict of interest exists, Westfield has the right to select counsel of its own choosing to continue its repre-

sentation in the underlying personal injury action, with such counsel's reasonable fees to be paid by Maryland; and (3) that Maryland is obligated to reimburse Westfield for all legal fees which have been expended in both defending the underlying action and bringing the present declaratory judgment action.

In response, Maryland argues that, although Westfield is entitled to a defense and indemnification in the underlying action, it is not entitled to counsel of its own choosing. Nevertheless, Maryland asserts that it has tendered a list of five approved law firms to Westfield, the expenses for which Maryland would assume. Furthermore, Maryland contends that Westfield may not recover attorneys' fees or expenses incurred in bringing its declaratory judgment action. Finally, Maryland maintains that Westfield is only entitled to recover reasonable fees expended in defense of the underlying action, and it requests a hearing to determine the amount of damages to which Westfield is entitled to recover in that connection.

*Discussion*

I.

When a conflict of interest between an insurer and its insured arises, "such that a question as to the loyalty of the insured's counsel to that insured is raised, the insured is entitled to select its counsel, whose reasonable fee is to be paid by the insurer." *Emons Industr., Inc. v. Liberty Mutual Ins. Co.,* 749 F.Supp. 1289, 1297 (S.D.N.Y.1990) (citations omitted); *Parker v. Agricultural Ins. Co.,* 109 Misc.2d 678, 682, 440 N.Y.S.2d 964, 967 (Sup.Ct.N.Y.Cty.1981) (quoting *Prashker v. United States Guar. Co.,* 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956)). As the New York Court of Appeals has noted, a conflict requiring independent counsel is necessary when "the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable." *Public Serv. Mut. Ins. Co. v. Goldfarb,* 53 N.Y.2d 392, 401 at n. *, 442 N.Y.S.2d 422, 427 at n. *, 425 N.E.2d

810, 815 at n. * (1981); *see also Klein v. Salami,* 545 F.Supp. 175, 179 (E.D.N.Y.1982).

In fact, courts construing New York law have consistently held that where such a conflict exists, "the interests of the insured and insurer are best accommodated by permitting the insured to choose his own counsel and by requiring the insurer to pay the reasonable fees of that counsel." *Klein,* 545 F.Supp. at 179 (citations omitted); *Emons Industr.,* 749 F.Supp. at 1297 (citations omitted); *Goldfarb,* 53 N.Y.2d at 401, 442 N.Y.S.2d at 427, 425 N.E.2d at 814–15.

With respect to the case at bar, the Court agrees with Westfield that a clear conflict of interest is present between itself and Maryland. As noted in the cases cited above, Maryland may continue to attempt to avoid coverage of any liability assessed against Westfield in the underlying action by invoking policy exclusions. Furthermore, Maryland can present Westfield's case in such a way as to defeat liability based upon the ground of Westfield's own negligence. Indeed, as implicitly recognized by Maryland, a finding of Westfield's affirmative negligence would trigger the policy's exclusion and thereby relieve Maryland of any obligation to indemnify Westfield. That the loyalty of the insurer's attorney would consequently be divided can hardly be questioned. *See Klein,* 545 F.Supp. at 179. Accordingly, the conflict presented herein requires independent counsel on behalf of Westfield.

Maryland's argument that, since an attorney retained to represent the insured must defend the insured as to each and every aspect of the lawsuit, does not address the question of a conflict of interest. Furthermore, although the Court recognizes the well-established principle that an insurer's duty to defend is broader than the duty to indemnify, it is clear that the presence of a conflict of interest based on divided loyalties necessitates independent counsel. *See Lowenstein Dyes & Cosmetics v. Aetna Life and Casualty Co.,* 524 F.Supp. 574, 579 (E.D.N.Y. 1981), *aff'd,* 742 F.2d 1437 (2d Cir.1983).[1]

---

1. Maryland offers no support for its contention that Westfield is not entitled to select its own

counsel because it is merely an additional insured under the policy.

■ Finally, as to Maryland's contention that it should be permitted to participate in the selection of Westfield's counsel, the argument advanced is unavailing. In *New York State Urban Dev. Corp. v. VSL Corp.*, 738 F.2d 61, 65–55 (2d Cir.1984), the court held that the insurer was permitted to participate in the selection of the insured's counsel because the policy at issue specifically provided that the insurer was only obligated to pay defense costs if it consented to the choice of counsel. No such clause appears in the policy at issue herein. In addition, even if the Court were to entertain Maryland's suggestion that its proffered list of law firms affords Westfield an adequate array of counsel from which to choose, it is nevertheless true, as Maryland concedes, that each of the firms on that list is regularly retained by Maryland to work on other files. Therefore, the independent nature of such counsel would be questionable at best.

With respect to this point, it is worthy of mention that "[t]he Second Circuit has long recognized that the relationship between a client and the attorney of his or her choice is one that should not be readily disrupted." *Emons*, 749 F.Supp. at 1292 (citations omitted). In that sense, in addition to the other reasons discussed above, it would be inappropriate to force Westfield to dismiss its chosen counsel in favor of counsel chosen by Maryland. *See id.* (noting that "a client who is forced to relinquish counsel of his or her choice 'incurs a loss of time and money in being compelled to retain new counsel....'") (citation omitted). Accordingly, the Court holds that Westfield is entitled to select its own counsel, the reasonable fees of whom will be paid by Maryland.

## II.

■ With respect to Westfield's motion for attorneys' fees incurred in connection with this declaratory judgment action, the Court notes that under New York law, "such a recovery may not be had in an affirmative action brought by an assured to settle its rights ... but only when [the insured] has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080, 1085 (1979) (citations omitted); *see also Puritan Ins. Co. v. Eagle Steamship Co.*, 779 F.2d 866, 872 (2d Cir.1985). Although Westfield argues that various actions taken—or not taken—by Maryland have forced Westfield into a defensive position, New York courts generally have looked to whether the insurer commenced legal proceedings in order to assess an insured's claim for attorneys' fees. *See Mighty Midgets*, 47 N.Y.2d at 21, 416 N.Y.S.2d at 564, 389 N.E.2d at 1084; *Barry v. Romanosky*, 147 A.D.2d 605, 538 N.Y.S.2d 14 (2d Dep't 1989); *State Farm Fire and Casualty Ins. Co. v. Irene S.*, 138 A.D.2d 589, 526 N.Y.S.2d 171 (2d Dep't 1988).

Consequently, since it appears that Maryland took no affirmative legal steps to free itself of policy obligations, Westfield's motion for attorneys' fees expended in the prosecution of this declaratory judgment action is denied.

## III.

■ With regard to Westfield's motion for legal fees incurred during the pendency of the underlying action, the Court finds that Westfield is entitled to reasonable expenses in that connection. Generally, where an insured is forced to defend an action due to the insurer's wrongful refusal to provide a defense, the insured is entitled to recover the reasonable counsel fees incurred. *United States Fidelity and Guar. Co. v. Copfer*, 48 N.Y.2d 871, 873, 424 N.Y.S.2d 356, 357, 400 N.E.2d 298, 299 (1979) (citations omitted); *AFA Protective Systems, Inc. v. Atlantic Mut. Ins. Co.*, 157 A.D.2d 683, 549 N.Y.S.2d 783 (2d Dep't 1990); *Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 713 F.Supp. 694, 697 (S.D.N.Y.1989) (citations omitted); *see generally* Barry Ostrager and Thomas Newman, *Insurance Coverage Disputes*, § 5.05(b) at 148 (1990). In that connection, Maryland acknowledges that it is liable for those costs.

■ Although Maryland has indicated that a hearing may be required in order to determine the reasonableness of the legal fees incurred by Westfield, it has failed to specify

any particular objection to the fees sought. In fact, as Westfield points out, Maryland has been in possession of the pertinent legal bills for well over one year, and has failed to even assert a factual allegation which would suggest that the costs incurred were unreasonable in any respect. Accordingly, there is no basis for Maryland's request. *See Scali, McCabe, Sloves, Inc. v. North River Ins. Co.,* 532 F.Supp. 203, 207 (S.D.N.Y.1981) (finding that insurer, "with one small exception ... failed to make a showing [regarding the reasonableness of the attorneys' fees in the underlying action]"). As was the case in *Scali,* in the case at bar Maryland fails to raise any genuine issue of material fact as to the reasonableness of the fees incurred by Westfield. Fed.R.Civ.P. 56(c). Accordingly, Westfield's motion for summary judgment in this regard is granted.

### Conclusion

For the reasons stated above, Westfield's motion for summary judgment is granted to the extent that it shall select its own counsel and it shall be reimbursed for fees incurred in connection with the defense of the primary action. On the other hand, for the reasons stated above, Westfield's motion for attorneys' fees incurred as a result of the commencement and pursuit of the declaratory judgment action is denied.

SO ORDERED.